# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL MEAT ASSOCIATION, | CASE NO. CV-F-08-1963 LJO DLB |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE MOTION FOR PRELIMINARY INJUNCTION; PRELIMINARY INJUNCTION ORDER** |
| and | |
| AMERICAN MEAT INSTITUTE, | |
| Plaintiff-Intervenor | |
| v. | |
| EDMUND GERALD BROWN, et. al, | |
| Defendants, | |
| and | |
| HUMANE SOCIETY, et al, | |
| Defendant-Intervenors. | |
| _____/ | |

Pursuant to notice filed on December 23, 2008, Plaintiff National Meat Association moves  the Court for a preliminary injunction enjoining Defendants Edmund G. Brown, Arnold Schwarzenegger, and the State of California (collectively "defendants" or "California") from enforcing California Penal Code § 599f, as amended and effective January 1, 2009, against swine slaughterhouses regulated by the Federal Meat Inspection Act, 21 U.S.C. § 601 et seq.  Defendants filed an opposition on January 28, 2009.  Plaintiffs filed a reply on February 4, 2009.  Due to the thorough briefing by the parties and no response to the Court's invitation to request oral argument, the Motion for Preliminary Injunction was taken under submission pursuant to Local Rule 78-230(h) and the hearing set for February 25, 2009 was vacated.  Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

1

**FACTUAL OVERVIEW**

Plaintiff National Meat Association is a voluntary membership-based trade association that represents the interests of packers and processors of livestock, including swine, and meat, including pork and pork products throughout the United States.  Plaintiff Intervenor American Meat Institute is a voluntary membership-based trade organization which has members in California that package and process meat products.

The defendants are the State of California and its officers Arnold Schwarzenegger and Edmund Brown, the Governor and Attorney General, respectively. Defendant intervenors The Humane Society of the United States, Farm Sanctuary, Inc., the Humane Farming Association, and Animal Legal Defense Fund are non-profit organizations dedicated to the advocacy and protection of animals.

**A.     California Penal Code § 599f, as amended**

Effective January 1, 2009, California Penal Code § 599f, as amended ("Section 599f"), prohibits the sale of meat or meat product of "nonambulatory" animals for human consumption, and requires the immediate euthanization of nonambulatory animals. Defendants argue that Section 599f was amended in response to video footage obtained by the Humane Society of inhumane treatment of animals at a slaughterhouse facility.  In addition to the concern for the humane treatment of the animals, the public health concern was raised as to the meat derived from "downed animals."  (Doc. 53, California's Opposition p. 3.)  Downed animals may be susceptible to various diseases and have a greater likelihood of carrying disease, which can be passed onto humans from contaminated meat.  Defendants argue that the amendments to Section 599f prohibit the purchase, slaughter and sale of non-ambulatory ("downed") animals for the protection of people, the animals and the food supply. (Doc. 53, California's Opposition p. 3-4.)

Section 599f provides:

599f. Nonambulatory animals; slaughter houses, stockyards, auctions, market agencies, or dealers; transactions; processing; euthanasia; movement; violations

> (a) No slaughterhouse, stockyard, auction, market agency, or dealer shall buy, sell, or receive a nonambulatory animal.

> (b) No slaughterhouse shall process, butcher, or sell meat or products of nonambulatory animals for human consumption.

( c) <u>No slaughterhouse shall hold a nonambulatory animal without taking immediate action to humanely euthanize the animal</u>.

(d) No stockyard, auction, market agency, or dealer shall hold a nonambulatory animal without taking immediate action to humanely euthanize the animal or to provide immediate veterinary treatment.

(e) While in transit or on the premises of a stockyard, auction, market agency, dealer, or slaughterhouse, a nonambulatory animal may not be dragged at any time, or pushed with equipment at any time, but shall be moved with a sling or on a stoneboat or other sled-like or wheeled conveyance.

(f) No person shall sell, consign, or ship any nonambulatory animal for the purpose of delivering a nonambulatory animal to a slaughterhouse, stockyard, auction, market agency, or dealer.

(g) No person shall accept a nonambulatory animal for transport or delivery to a slaughterhouse, stockyard, auction, market agency, or dealer.

(h) A violation of this section is subject to imprisonment in the county jail for a period not to exceed one year, or by a fine of not more than twenty thousand dollars ($20,000), or by both that fine and imprisonment.

(I) As used in this section, "<u>nonambulatory</u>" <u>means unable to stand and walk without assistance</u>.

(j) As used in this section, "animal" means live cattle, swine, sheep, or goats.

(k) As used in this section, "humanely euthanized" means to kill by a mechanical, chemical, or electrical method that rapidly and effectively renders the animal insensitive to pain. (Emphasis added.)

Section 599f prohibits a slaughterhouse from buying, selling, or receiving nonambulatory animals for human consumption. Any such animal that is received nonambulatory or becomes so after receipt must be euthanized. Cal.Penal Code §599f( c).

**B.      Effect upon Plaintiff**

Plaintiff argues that Section 599f will expand dramatically the restrictions and prohibitions governing the manner in which federally-inspected slaughterhouses in California, including those that slaughter swine, may purchase and process livestock for slaughter and the manner in which they may sell meat, including pork and pork products. Plaintiff argues that Section 599f expands the scope of criminal penalties imposed on such slaughterhouses and their employees for violations of the statute.

/////

/////

3

### REQUEST FOR PRELIMINARY INJUNCTION

Plaintiff moves for a preliminary injunction to enjoin enforcement of Section 599f against swine slaughterhouses pending resolution of the case on the merits.  Plaintiff argues that it is entitled to a preliminary injunction because it has a substantial likelihood of success on the merits, will be irreparably harmed if enforcement is not so enjoined and does not have an adequate remedy at law.  Absent injunctive relief, plaintiff argues its members will suffer irreparable injury, including potential criminal and monetary penalties and significant disruption of their members' business operations.  Plaintiff argues no adequate remedy at law exists because the State of California's sovereign immunity from suit.

**A.      Injunction Standards**

The legal principles applicable to a request for preliminary injunctive relief are well established.  To prevail, the moving party must show either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the moving party's] favor."  *Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985), *quoting* *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984).  Plaintiff need not show positively it will prevail on the merits. A reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief.  *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).  The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown.  *Oakland Tribune*, 762 F.2d at 1376.  "Under either formulation of the test [for injunctive relief], plaintiff must demonstrate that there exists a significant threat of irreparable injury."  *Id.*

A preliminary injunction's purpose is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined.  *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981).  "Status quo" means the last uncontested status that preceded the pending controversy.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).  Additional criteria must be satisfied for a preliminary injunction to be available to a plaintiff:

1.      A strong likelihood of success on the merits;

4

1          2.          Possibility of irreparable harm to plaintiff absent an injunction;

2          3.          Threatened injury to plaintiff outweighs damage which the proposed injunction may

3                       cause to the opposing party; and

4          4.          Public interest favors issuance of an injunction.

5   *See Regents of the Univ. of California v. American Broadcasting Companies, Inc.*, 747 F.2d 511, 515

6   (9th Cir. 1984); *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197,

7   1200 (9th Cir. 1980).

8   **B.          Likelihood of Success on the Merits**

9          Plaintiff argues that it has a strong likelihood of success on the merits because Section 599f is

10  preempted.  Plaintiff argues that Section 599f, as applied to swine slaughter houses, is preempted by the

11  provisions of the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §601 et seq.

12          **1.          The Preemption Doctrine**

13         The preemption doctrine has its roots in the Supremacy Clause of the Constitution, which

14  provides that the Constitution, laws, and treaties of the United States are the "supreme Law of the Land

15  . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const.

16  art. VI, cl. 2.

17         Federal preemption can be either express or implied.  *See Fid. Fed. Sav. & Loan Ass'n v. de la*

18  *Cuesta*, 458 U.S. 141, 152-53, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Chicanos Por La Causa, Inc. v.*

19  *Napolitano*, 544 F.3d 976, 982 (9th 2008).  When a federal statute contains an explicit preemption

20  provision, we are to " 'identify the domain expressly pre-empted' by that language."  *Medtronic, Inc.*

21  *v. Lohr*, 518 U.S. 470, 484, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting *Cipollone v. Liggett*

22  *Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).  Express preemption statutory

23  provisions, however, should be given a narrow interpretation.  *Sprint Telephony PCS, L.P. v. County of*

24  *San Diego*, 543 F.3d 571, 578 (9th Cir. 2008), *petition for certiorari filed*, 77 USLW 3366 (Dec 10,

25  2008).

26          Implied preemption has two subcategories.  *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525,

27  541, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001); *Chicanos Por La Causa, Inc. v. Napolitano*, 544 F.3d at

28  982.  The first is field preemption, where "the depth and breadth of a congressional scheme ... occupies

the legislative field." *Id.* (citing *Fid. Fed. Sav.*, 458 U.S. at 153, 102 S.Ct. 3014). The second is conflict preemption, which occurs when either " compliance with both federal and state regulations is a physical impossibility," *Fid. Fed. Sav.*, 458 U.S. at 152, 102 S.Ct. 3014 (quoting *Fla. Lime & Avocado Growers, Inc.*, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)), or where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fid. Fed. Sav.*, 458 U.S. at 152 (internal quotation marks omitted) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).   For conflict preemption to apply, the conflict must be an actual conflict, not merely a hypothetical or potential conflict. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 89, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

## 2.    Arguments on Express Preemption

Plaintiff argues that the Federal Meat Inspection Act expressly preempts states from enacting laws which impose additional or different requirements on meat processing and inspections.  Plaintiff argues that 21 U.S.C. §678 precludes state requirements which are "in addition to, or different than those under this chapter . . ."  Plaintiff argues the Section 599f imposes additional or different requirements because it prohibits slaughterhouses from allowing meat from a nonambulatory animal, in particular swine, to be processed or butchered for human consumption.  This differs from federal law which allows slaughterhouses to set aside disabled or fatigued animals for inspection.  In addition, Section 599f imposes an additional prohibition on slaughterhouses' buying or receiving nonambulatory animals.  Plaintiff argues that Section 599f simultaneously expands the scope of criminal penalties imposed on such slaughterhouses and their employees for violations of the statute.

Defendants argue the Congress specifically allowed states to enact laws consistent with the Federal Meat Inspection Act and did not expressly preempt state laws: "This Act shall not preclude any State . . .  from making requirement[s] or taking other action, consistent with this Act, with respect to any other matters regulated under this Act."  21 U.S.C. §678.  Defendants acknowledge that the FMIA expressly preempts in two areas: (1) the "premises, facilities and operations of any establishment at which inspection is provided," and (2) the "marking, labeling, packaging and ingredient requirements."  Defendants acknowledge that the FMIA exclusively deals with certain aspects of the meat inspection process, but defendants argue that all other aspects may be regulated. (Doc. 53, California's Opposition

6

p. 7-8.)  Defendants argue that §678 of the FMIA does not limit a state from regulating what "type of meat" may be sold for human consumption,  citing *Empacadora De Carnes De Fresnillo v. Curry*, 476 F.3d 326, 333 (5th Cir.), *cert. denied,* 127 S.Ct. 2443, 167 L.Ed.2d 1131 (2007).  (Doc. 53, Opposition p. 8.)  Defendants note that there is no provision in FMIA or the regulations that expressly provide for the method nonambulatory animals are processed and slaughtered.

Further, defendants argue the federal regulations implementing the FMIA contemplate disposal of nonambulatory animals and do not require that this "type of meat' be processed and introduced into the food supply. (Doc. 53, Opposition p. 8, citing 9 C.F.R. §§ 309.2(b), 309.3(a-c), 309.13, 313.2(d).) And *Cavel Intern., Inc. v. Madigan*, 500 F.3d 551, 554 (7th Cir. 2007) (The Act is concerned with inspecting premises at which meat is produced for human consumption, see, e.g., 21 U.S.C. § 606, rather than with preserving the production of particular types of meat for people to eat), *cert. denied*, 128 S.Ct. 2950, 171 L.Ed.2d 863 (2008).  Defendants argue Section 599f specifies what type of meat may enter the food supply and how to humanely treat the animals.  It does not regulate the "premises, operations" or govern the "marking, labeling and packaging" of ingredients.  No specific language in the FMIA expressly forbids California from specifying what type of meat may be processed for human consumption.

### 3.    The Federal Meat Inspection Act ("FMIA")

Plaintiff challenges Section 599f's provisions, as applied to swine slaughterhouses in the State of California, as conflicting with those imposed under the FMIA, 21 U.S.C. § 601 et seq. and its implementing regulations.  Plaintiff argues that Section 599f expands the prohibitions governing the manner in which federally-inspected slaughterhouses located within the State of California, including those that slaughter swine, may purchase and process livestock for slaughter and the manner in which they may sell meat, including pork and pork products.[1]

---

[1] Defendant Intervenors, The Humane Society *et. al*, contend the challenge to Section 599f is untimely.  Section 599f has been in existence for 14 years and was amended in July 2008.  The Humane Society contends plaintiff has delayed enforcing its rights-first in the 14 years of the statute's existence, and then from the delay from July 2008 to December 2008, shortly before Section 599f went into effect.  Section 599f, however, has not been in its current, challenged form for 14 years.  The amended Section 599f, effective January 1, 2009, differs because it no longer exempts federally-inspected slaughterhouses from its prohibition on buying, selling, or receiving a nonambulatory animal; it requires the immediate euthanization of any animal that becomes nonambulatory while awaiting slaughter; and it prohibits processing meat from

7

1    The Federal Meat Inspection Act, 21 U.S.C. § 601 et seq., was enacted by Congress in 1907 in

2    response to concerns over the safety of meat and meat products.  The FMIA provides "an elaborate

3    system of inspection of animals before slaughter, and of carcasses after slaughter and of meat-food

4    products, with a view to prevent the shipment of impure, unwholesome, and unfit meat and meat-food

5    products in interstate and foreign commerce."  *Pittsburgh Melting Co v. Totten*, 248 U.S. 1, 4-5, 39 S.Ct.

6    3, 3 (1918).  The very purpose of the FMIA is to ensure the safety of the nation's food supply and to

7    minimize the risk to public health from potentially dangerous food and drug products. See 21 U.S.C. §

8    602 (stating that "[i]t is essential in the public interest that the health and welfare of consumers be

9    protected by assuring that meat and meat food products distributed to them are wholesome, not

10   adulterated, and properly marked, labeled, and packaged"); *U.S. v. Stanko*, 491 F.3d 408, 416 (8th Cir.

11   2007) (FMIA's primary public-health purpose is to protect consumers from unsafe meat, citing 21 U.S.C.

12   §602), *cert. denied*, 128 S.Ct. 1874, 170 L.Ed.2d 752 (2008) .

13   Congress included an express provision that preempts States from enacting any processing or

14   inspection law that adds to or is different from those enacted under the FMIA.  Section 678 states in part:

15   Requirements within the scope of this chapter with respect to premises,
     facilities and operations of any establishment at which inspection is
16   provided . . . which are <u>in addition to, or different than</u> those made under
     <u>this chapter</u> may not be imposed by any State . . . .
17

18   21 U.S.C. § 678 (emphasis added).  The chapter referred to is the chapter for "Meat Inspection."  21

19   U.S.C. §601 et seq.  This preemption clause expressly limits a state in its ability to govern meat

20   inspection requirements. *Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*, 476 F.3d 326, 333

21   (5th Cir. 2007).

22   Congress did not intend to preempt the entire field of meat commerce under the FMIA.  The Act's

23   title refers specifically to meat inspection, rather than a more comprehensive scheme of meat regulation.

24   The FMIA permits the states to create laws consistent with the FMIA, for "other matters":

25   This chapter shall not preclude any State . . . from making requirement[s]
     or taking other action, consistent with this chapter, with <u>respect to any</u>
26   <u>other matters</u> regulated under this chapter.

27   _____

28   nonambulatory animals.  Thus, the Court rejects the argument based on untimeliness.

8

1   21 U.S.C. § 678 (emphasis added).  The FMIA thus permits states to regulate what types of meat may

2   be sold for human consumption in the first place.  *Empacadora*, 476 F.3d at 334 (holding that the FMIA

3   does not preempt the type of meat, such as horse meat, which can be sold for human consumption).  The

4   FMIA did not expressly preempt Texas's prohibition on horsemeat for human consumption.  *See also*

5   *U.S. v. Stanko*, 491 F.3d at 418 (FMIA does not preempt state unfair-trade-practices laws in general).

6          The FMIA is a public health statute, aimed at "preventing the use in commerce of meat and meat

7   food products which are adulterated...." 21 U.S.C. § 603(a):

8          § 603. Inspection of meat and meat food products:

9          (a) Examination of animals before slaughtering; diseased animals slaughtered separately
10         and carcasses examined

11             For the purpose of preventing the use in commerce of meat and meat food
               products which are adulterated, the Secretary shall cause to be made, by
12             inspectors appointed for that purpose, an examination and inspection of
               all amenable species before they shall be allowed to enter into any
13             slaughtering, packing, meat-canning, rendering, or similar establishment,
               in which they are to be slaughtered and the meat and meat food products
14             thereof are to be used in commerce; and all amenable species found on
               such inspection to show symptoms of disease shall be set apart and
15             slaughtered separately from all other amenable species, and when so
               slaughtered the carcasses of said amenable species shall be subject to a
16             careful examination and inspection, all as provided by the rules and
               regulations to be prescribed by the Secretary, as provided for in this
17             subchapter. (Emphasis added.)

18   FMIA requires the Secretary of Agriculture to examine and inspect "all meat food products prepared for

19   commerce in any slaughtering, meat-canning, salting, packing, rendering or similar establishment...."

20   21 U.S.C. § 606:

21          § 606. Inspectors of meat food products; marks of inspection; destruction of condemned
                products; products for export; catfish examination and inspection
22

23              (a) In general

24              For the purposes hereinbefore set forth the Secretary shall cause to be
                made, by inspectors appointed for that purpose, an examination and
25              inspection of all meat food products prepared for commerce in any
                slaughtering, meat-canning, salting, packing, rendering, or similar
26              establishment . . .

27   The act has broad coverage - requiring slaughter in accordance with the FMIA.  21 U.S.C § 610

28   (requiring slaughter to be in compliance with the chapter on meat inspection.)

1          **4.      Implementing Regulations**

2          The Food Safety and Inspection Service ("FSIS"), an agency of the United States Department

3    of Agriculture ("USDA"), is charged with implementing and enforcing the FMIA. See 21 U.S.C. § 601

4    et seq. ("The term Secretary means the Secretary of Agriculture").   The FMIA's implementing

5    regulations are set forth in Title 9 of the Code of Federal Regulations, 9 C.F.R. § 301 et seq., and govern

6    the meat production process from the time animals are delivered to the slaughterhouse to the time

7    consumers purchase the meat product.

8          The implementing regulations establish the inspection procedure from the initial arrival of the

9    animals at a facility.  "All livestock . . . entering any official establishment . . . shall be inspected,

10   handled, . . . as required by the regulations in this subchapter."  9 C.F.R. § 302.3.  The implementing

11   regulations set out a procedure for identifying and handling "non-ambulatory disabled livestock."  First,

12   the implementing regulations define "disabled livestock," with symptoms of:  "(5) Lack of muscular

13   coordination; (6) Inability to walk normally or stand."  9 C.F.R. § 301.2.

14         The USDA classifies all downed livestock presented for slaughter as "U.S Suspects."  A non-

15   ambulatory disabled animals may be set aside and later presented for slaughter.

16                    (b) All seriously crippled animals and non-ambulatory disabled livestock
                      shall be identified as U.S. Suspects and disposed of as provided in §
17                    311.1 of this subchapter unless they are required to be classed as
                      condemned under § 309.3. Non-ambulatory disabled livestock are
18                    livestock that cannot rise from a recumbent position or that cannot walk,.
                      . .

19   9 C.F.R. § 309.2(b). Animals which are identified as "U.S. Suspect," including non-ambulatory disabled

20   livestock, are set aside and handled according to a set procedure:

21                    (n) Each animal identified as a U.S. Suspect on ante-mortem inspection
                      shall be set apart and shall be slaughtered separately from other livestock
22                    at that establishment unless disposed of as otherwise provided in this part.

23                    (o) Each animal identified as a U.S. Suspect on ante-mortem inspection,
                      when presented for slaughter shall be accompanied with a form MP 402-2
24                    on which the inspector at the establishment . . . .

25   9 C.F.R. § 309.2. The regulations provide that U.S. Suspects and "disabled livestock" shall be separated:

26   "Disabled livestock and other animals unable to move . . . shall be separated from normal ambulatory

27   animals and placed in the covered pen." 9 C.F.R. § 313.2. These animals are held in the "covered pen

28   . . . while awaiting disposition by the inspector." 9 C.F.R. § 313.1( c).  If upon inspection, the downed

10

1    animal shows signs of certain diseases, it is condemned and disposed of according to specified

2    procedures. See 9 C.F.R. §§ 309.4-309.15.   However, if the downed animal passes postmortem

3    inspection by a veterinary officer, it may be passed in whole or in part for human food. See generally 9

4    C.F.R. § 311.1.

5         Thus, the FMIA, along with its implementing regulations, is a public health statute the scope of

6    which is to examine and inspect meat and meat products and employing procedures and methods to

7    ensure the safety of the nation's food supply and to minimize the risk to public health.

8         **5.       Express Preemption of Section 599f**

9         The FMIA's preemption clause expressly limits states in their ability to govern meat inspection

10   and labeling requirements "of any establishment at which inspection is provided [under the statute]." 21

11   U.S.C. §678.  *Fidelity Fed. Sav. & Loan Ass'n,* 458 U.S. at 153 ("Federal regulations have no less

12   preemptive effect than statutes.")

13        California's statute, which requires meat products to be handled in a manner other than that

14   prescribed by the FMIA or the USDA regulations, is "in addition to or are different than" the federal

15   regulations.  The express preemption provision contemplates all meat inspection shall be according to

16   the standards in FMIA.  Section 599f alters the process and methods for the receipt of animals, the

17   determination of the animal as "disabled" or "nonambulatory," and also alters the subsequent handling

18   of the nonambulatory animal. *Empacadora,* 476 F.3d at 333 (the FMIA's preemption clause is more

19   naturally read as being concerned with the methods, standards of quality, and packaging that

20   slaughterhouses use).  The FMIA and its implementing regulations permit a slaughterhouse to set aside

21   for further inspection an animal that is nonambulatory.

22        Section 599f, on the other hand, expressly requires that the same animal be "immediately"

23   euthanized. Assessing whether the animals are ambulatory or nonambulatory is undoubtedly an

24   "inspection."   Assessing whether the animals are ambulatory or nonambulatory is, by defendants'

25   admission, in order to protect quality of the food supply.  Determining what to do with an animal found

26   to be "nonambulatory" is part of an inspection.  Pursuant to Section 599f, upon an inspection and

27   determination that an animal is "nonambulatory," the animal must be euthanized.  The FMIA does not

28   /////

11

1    contain such a requirement. The implementing regulations require the animal to be set aside for further

2    inspection.

3          The FMIA expressly prohibits state requirements that are "in addition to" or "different than"

4    those in FMIA. Section 599f imposes inspection requirements upon federally inspected slaughterhouses

5    which are in addition to or different than FMIA. Thus, Section 599f is expressly preempted by the

6    FMIA.  21 U.S.C. § 678 ("Requirements within the scope of this chapter with respect to premises,

7    facilities and operations of any establishment at which inspection is provided . . . which are in addition

8    to, or different than those made under this chapter may not be imposed by any State.")

9          Defendants argue that the FMIA does not limit California's ability to regulate the "type of meat"

10   which may be sold for human consumption, citing *Empacadora*, 476 F.3d at 334 (holding that the FMIA

11   does not preempt the type of meat, such as horse meat, which can be sold for human consumption).

12   Defendants argue that Section 599f limits the "type of meat" sold for human consumption.  It limits the

13   type of meat by limiting meat of "nonambulatory animals."  The "type of meat" is "nonambulatory

14   meat."  Here, California argues that it limited the "type of meat" sold for human consumption by

15   prohibiting purchasing, selling or processing nonambulatory animals, just as Texas and Illinois prohibit

16   the processing of horse meat for human consumption.  *See also Cavel Int'l,* 500 F.3d 551 (The FMIA's

17   preemption clause did not preempt Illinois statute making it unlawful to slaughter horses for human

18   consumption).

19         California's argument is without merit.  *Empacadora* stated that the FMIA does not prohibit a

20   state from barring any particular type of animal from being introduced into the food chain, such as horse

21   meat.  *Empacadora*, 476 F.3d at 333 ("The FMIA does not expressly dispose states of the ability to

22   define what meats may be available for slaughter and human consumption."); *Cavel*, 500 F.3d at 554,

23   (acknowledging that if a certain animal specifies are not produced for human consumption, the FMIA

24   does not apply).  Thus, a state rightly could preclude different types of meat for human consumption,

25   such as horse meat or dog meat or rat meat, for that matter.  A nonambulatory pig is not a "type of meat."

26   A pig is a pig.  A pig that is laying down is a pig.  A pig with three legs is a pig.  A fatigued or diseased

27   pig is a pig.  Calling it something else does not change the type of meat produced.  Thus, the exception

28   discussed in *Empacadora* does not apply.

                                              12

Pursuant to *Empacadora* and *Cavel*, California could prohibit all pigs from being processed for human consumption and not be preempted by FMIA.  However, California permits pigs to be produced for human consumption.  Therefore, California is barred from imposing additional or different inspection requirements on animals to be produced for human consumption.  Having allowed pigs and swine to enter the food supply, California cannot alter the federally mandated requirements of inspection.  *See Nat'l Broiler Council v. Voss*, 44 F.3d 740, 745 (9th Cir. 1994) ( In interpreting identical express preemption language in the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. § 467e, the Ninth Circuit held that the phrase "in addition to, or different than" preempts States from enforcing any regulations "not identical" to federal requirements.)

California also argues that plaintiff cites to no provision in the FMIA or the regulations which expressly provides for how nonambulatory animals shall be processed and slaughtered in the normal course of business.  As shown above, the federal regulations govern how an animal is handled and processed from the time the animal enters the slaughterhouse premises.  FMIA intends to regulate the "premises, facilities and operations" of federally inspected slaughterhouses. Indeed, regulations are in place which process the very kind of nonambulatory animals that are addressed in Section 599f.

California argues that Section 599f is required to protect humane treatment of animals.  FMIA and its implementing regulations, however, contain provisions for the humane treatment of animals. See, e.g., 21 U.S.C. §610 (inhumane slaughter prohibited); 9 C.F.R. §313.1(livestock pens); 2 C.F.R. §313.9 (handling of livestock).  California is not precluded from enforcing the provisions of the FMIA. The FMIA allows for concurrent state jurisdiction to enforce its requirements. See 21 U.S.C. § 678. However, such concurrent jurisdiction does not allow states to enact their own additional requirements. *Nat'l Broiler Council v. Voss*, 44 F.3d 740, 746 (9th Cir.1994) (finding preemption under FMIA and noting that states may enforce the federal labeling laws, but that the USDA did not grant states authority to enact their own, additional requirements).

Accordingly, Section 599f impermissibly "differs from" and is "addition to" the FMIA and is therefore preempted by such federal laws.

**6.      "Conflict Preemption"**

Plaintiff argues that Section 599f is impliedly preempted because it conflicts with the FMIA.

13

1    Plaintiff argues uniformity in the federal regulation of meat inspections was of paramount importance

2    to Congress, and trumps California's efforts to enact a different, conflicting law with respect to the

3    human consumption of nonambulatory animals, citing *Armour & Co. v. Ball*, 468 F.2d 76, 84-85 (6th

4    Cir. 1972), *cert. denied*, 411 U.S. 981, 93 S.Ct. 2267 (1973); *see also Nat'l Boiler Council*, 44 F.3d at

5    746.  Swine slaughterhouses in California currently follow standard operating procedures.  Under federal

6    regulations, nonambulatory animals may be delivered to slaughterhouse but under Section 599f such

7    animals would have to be refused and returned to shipper.  Animals that are later unable to stand would

8    have to be euthanized immediately.  Nonambulatory animals due to fatigue may be slaughtered under

9    federal regulations but not under Section 599f.

10    Defendants argue that Section 599f is consistent with the federal provisions.  A slaughterhouse

11    may comply with federal law while complying with Section 599f.  Defendants argue that there is no

12    federal requirement that an animal without the ability to stand and walk be held at the slaughterhouse.

13    There is no federal requirement that slaughterhouses hold nonambulatory animals until the animal is

14    inspected.  Rather, it is the slaughterhouse's economic choice to hold the animal.

15    Conflict preemption analysis examines the federal statute as a whole to determine whether a

16    party's compliance with both federal and state requirements is impossible or whether, in light of the

17    federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of

18    Congress's objectives.  *Whistler Investments, Inc. v. Depository Trust and Clearing Corp.,* 539 F.3d

19    1159, 1164 (9th Cir. 2008), citing  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S.Ct.

20    2288, 147 L.Ed.2d 352 (2000).

21    Here, the implied conflict preemption analysis is substantially similar to the analysis of the Act's

22    express preemption provision.  As noted *infra*, the FMIA provides an elaborate meat inspection scheme

23    "with a view to prevent the shipment of impure, unwholesome, and unfit meat and meat-food products

24    in interstate and foreign commerce."  *Pittsburgh Melting Co v. Totten*, 248 U.S. at 4-5.  The purpose of

25    the FMIA is to ensure the safety of the nation's food supply and to minimize the risk to public health

26    from potentially dangerous food and drug products. 21. U.S.C. § 602. The FMIA and the implementing

27    regulations contain comprehensive requirements for meat inspection, handling and processing.  Section

28    599f imposes different or additional requirements on inspection, handling and processing meat.  For

14

1  instance, "disabled" livestock, which is defined in part as unable to stand and walk, are subject to further

2  inspection.  Under Section 599f, disabled livestock must be immediately euthanized.

3        Defendants argue that there is no implied preemption because there is no federal requirement that

4  a disabled animal be set aside for further inspection. (Doc. 53, Opposition p.11.)  California argues that

5  the animal can be immediately euthanized without violating any federal requirement.

6        Section 599f is in conflict with the FMIA and its implementing regulations.  The regulations state

7  that disabled livestock shall be identified as U.S. Suspects (21 C.F.R. §309.2) and set aside for further

8  inspection and disposition. 9 C.F.R. §313.2.  Section 599f conflicts with the regulatory scheme because

9  it alters the federally mandated procedure once an animal is identified as disabled.  This inspection

10  procedure is part of a comprehensive scheme to ensure the quality of the meat supply.  While California

11  argues that it too seeks to protect the meat supply, it is doing so with language that conflicts with the

12  procedure described in the implementing regulations.  These additional state requirements conflict in

13  areas that are clearly encompassed by the federal regulations.

14        **7.     Plaintiff's Dormant Commerce Clause and "Constitutionally Vague" Arguments**

15        Since the Court has found that Section 599f is expressly and impliedly preempted by the FMIA

16  and its implementing regulations, the Court does not need to reach the additional arguments that Section

17  599f violates the dormant commerce clause and is unconstitutionally vague.

18  **C.     Irreparable Injury**

19        Plaintiff argues that its members will be irreparably harmed unless the Court grants injunctive

20  relief.  Plaintiff's members face a conflict between complying with the FMIA's processing and safety

21  inspection requirements or the different and conflicting requirements of Section 599f.  Section 599f

22  imposes imprisonment and monetary fines for failure to comply.  Plaintiff also argues that Section 599f

23  will result in substantial disruption of members' business operations.  Plaintiff gives as an example that

24  at one facility, the facility will be required to euthanize and render approximately 225 additional hogs

25  per day, which requires a costly expansion of the facility and a significant loss of annual revenues.

26  (Doc. 20, Terrill Decl. ¶9 (225 hogs), ¶12 (cost of compliance).) These losses, plaintiff further argues,

27  cannot be compensated at law because Defendants enjoy immunity from suit for damages.

28        California argues that plaintiff has not presented evidence that there will be a substantial

1  disruption of members' business.  Plaintiff fails to cite to any evidence that 225 hogs are temporarily

2  unable to walk (citing Plaintiff's brief at p. 22.) There is no testimony on how many of the 225 hogs

3  would pass federal inspection; plaintiff simply assumes all would fail federal inspection.  Further,

4  defendants argue plaintiff over estimates the number of hogs needed to be euthanized, including hogs

5  that are sleeping, stress or fatigued.

6       A preliminary injunction "may only be granted when the moving party has demonstrated a

7  significant threat of irreparable injury, irrespective of the magnitude of the injury." *Simula, Inc. v.*

8  *Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999).  Plaintiff "must demonstrate immediate threatened

9  harm."  *Caribbean Marine Serv. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).  Plaintiff

10  must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following

11  trial. The preliminary injunction must be the only way of protecting the plaintiff from such harm.

12  *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3rd Cir. 1992).

13       Here, the evidence establishes that plaintiff's members comply with the FMIA inspection

14  requirements.  There is no evidence that plaintiff's members fail to so comply.  In compliance with the

15  FMIA, plaintiff's members process into the food supply swine which are "nonambulatory."  There is no

16  argument or evidence that the members are in violation of the FMIA for processing such nonambulatory

17  animals into the food supply.  Thus, the evidence establish that the plaintiff's members are in compliance

18  with the FMIA when they process nonambulatory animals, which pass federal inspection, into the food

19  supply.

20       The parties are in agreement that same animals would be barred from processing into the food

21  supply under Section 599f.  Plaintiff presents evidence of the quantity of swine which would be

22  precluded from being processed for human consumption and the corresponding estimated monetary loss

23  for one of its members.  Defendants argue that speculative injury does not support "irreparable harm,"

24  citing *Big Country Foods, Inc. v. Board of Ed. Of Anchorge Sch. Dist.* 868 F.2d 1085, 1088 (9th Cir.

25  1989) (plaintiff was out bid and sued to enjoin the governmental entities' acceptance of the lower bid.

26  The Court held that irreparable harm is not shown where the "lost profits" from a contract are

27  speculative.)

28       Here, the evidence is not speculative as to the economic harm. First, the evidence indicates, and

16

1   certainly common sense corroborates, that an animal meant for human consumption is worth more than

2   an animal designated for scrap. The evidence presented shows some level of significant monetary harm.

3   The defendants quibble over the exact number of pigs which would be rendered or the exact monetary

4   value of such animals.  What is required is <u>some</u> irreparable injury must be threatened; otherwise,

5   injunctive relief will be denied.  A preliminary injunction "may only be granted when the moving party

6   has demonstrated a significant threat of irreparable injury, <u>irrespective of the magnitude of the injury</u>."

7   *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d at 725 (emphasis added).  Further, if additional animals cannot be

8   processed into the food supply, plaintiff's members must have a way to dispose of nonambulatory

9   animals.   Common sense indicates that facilities may need to be expanded or alternative means

10  contracted for to dispose of the animals.   In addition, plaintiff's members face potential criminal

11  penalties for following the mandates of federal law.

12       The monetary losses are not compensable because defendants are entitled to sovereign immunity.

13  It is well established that agencies of the state are immune under the Eleventh Amendment from private

14  damages or suits for injunctive relief brought in federal court. *See*, *e.g.*, *Savage v. Glendale Union High*

15  *School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1040 (9th Cir. 2003) citing *Pennhurst State*

16  *School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  The Eleventh

17  Amendment precludes suits "in law or equity, commenced or prosecuted against one of the United States

18  by Citizens of another State, or by Citizens or Subjects of any Foreign State." *In re Pegasus Gold Corp.*,

19  394 F.3d 1189, 1195 (9th Cir. 2005).  A State may waive its sovereign immunity by consenting to suit.

20  *Id.*  Here, there is no argument that California has waived its sovereign immunity. Accordingly, relief

21  in the form of monetary damages is barred by California's sovereign immunity.

22       Defendant intervenors argue that plaintiff's members were in violation of the predecessor to

23  Section 599f - in that the predecessor statute required slaughterhouses to immediately euthanize

24  nonambulatory animals.  The Humane Society argues that plaintiff was in violation of the prior law, and

25  that the practices for euthanizing animals preexisted for 14 years before the amendment to section 599f.

26  Thus, the Humane society argues, there can be no irreparable harm.

27       This argument is summarily dismissed.  The former Section 599f did not apply to federally

28  inspected slaughterhouses.  The amended Section 599f changed the law, and encompassed federally

1   inspected slaughterhouses.  Under former 599f, federally inspected slaughterhouses were not covered,

2   and therefore were not required to comply with the provision to euthanize animals.

3         The Court finds that plaintiff is faced with an immediate threat of irreparable harm, given that

4   (1) Section 599f conflicts with the provisions of the FMIA, (2) compliance with Section 599f will

5   require slaughterhouses to divert to rendering nonambulatory animals covered by Section 599f, which

6   will increase the cost of processing scrap meat and reduce the revenue from human consumable animals,

7   (3) plaintiff's members face criminal penalties for failure to do so, and (4) monetary damages are

8   noncompensable because defendants are immune.  For these reasons, Plaintiff has shown a sufficient

9   threat of irreparable injury or loss for which there is no adequate remedy to support a preliminary

10  injunction.

11  **D.      Equities in Favor of California**

12        California argues that the equities weigh in favor of enforcement of the statute.  California argues

13  that in light of the health hazards of meat from nonambulatory animals slaughtered for human

14  consumption, California acted to protect the public's food supply and promote humane treatment of

15  animals.  Protection of the food supply far outweighs the purported economic harm to plaintiff.

16         Under Ninth Circuit precedent, the Court must examine the public interest involved. The public

17  interest inquiry primarily addresses the impact on non-parties rather than parties. *Sammartano v. First*

18  *Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002).  When

19  interim equitable relief is authorized and the public interest is involved, "courts of equity may, and

20  frequently do, go much farther both to give and withhold relief in furtherance of the public interest than

21  they are accustomed to go when only private interests are involved." *United States v. First Nat'l City*

22  *Bank*, 379 U.S. 378, 383, 85 S.Ct. 528, 531 (1965).  Injunctive relief may be refused where it would

23  adversely affect the rights of persons who are not parties to the litigation. *Horwitz v. Southwest Forest*

24  *Indus., Inc.*, 604 F.Supp. 1130, 1136 (D NV 1985); *see Publications Int'l, Ltd. v. Meredith Corp.*, 88

25  F.3d 473, 478 (7th Cir. 1996).  Where the public interest is involved, the court must also determine

26  whether the public interest favors the moving party. *Sammartano,* 303 F.3d at 974.

27        The public interest in this case is significant.  The public interest deals with the quality and

28  quantity of meat entering into the food supply.  California's interest is in ensuring that the meat supply

18

1   is not tainted by diseased or potentially diseased animals.  As discussed more fully above, downed

2   animals have been shown to have increased risk of carrying disease.  California has a significant interest

3   in ensuring the health of its citizens from properly handled and slaughtered animals.

4          On the other side of the equation, the risk of harm is minimized by the FMIA and its

5   implementing regulations.  The very purpose of the FMIA is to reduce and eliminate the potential risk

6   of infecting the food supply through comprehensive inspection procedures.  Thus, California's public

7   interest in protecting the quality of the food supply is embodied in the FMIA and its implementing

8   regulations.

9          There is the risk of harm should Section 599f NOT be enjoined. The risk exists for a reduction

10  in the quantity of the food supply.  As more fully explained above, the FMIA inspection procedures are

11  designed to eliminate the risk of disease, with the concomitant benefit of maximizing the abundance of

12  the food supply.  It is uncontroverted that California's statutory scheme will reduce, in some part, the

13  amount of meat introduced into the food supply.  It takes animals out of the food supply which

14  would/might pass federal inspection.  This Court does not have before it the evidence to determine

15  whether this reduction in and of itself is significant, but the evidence establishes that some reduction in

16  the food supply will occur.  *Sierra Club v. Georgia Power Co.*, 180 F.3d 1309, 1310 (11th Cir. 1999)

17  (Preliminary injunction denied where the harm to the public from reduced electrical power outweighed

18  any potential environmental harm from the continued discharge.)  Reducing the quantity of the food

19  supply is a substantial factor warranting enjoining enforcement of Section 599f.

20         Further, the potential harm from enjoining Section 599f is lessened because, as shown above,

21  California has concurrent jurisdiction to enforce the provisions of the FMIA.

22         The risk of inhumane treatment to animals is also considered as a significant public interest.  As

23  argued by the Humane Society, "[i]f the California Legislature believed that federal law already

24  protected both animal welfare and the public health . . . it would not have amended section 599f in the

25  wake of the HSUS's investigation of Hallmark/Westland."  (Doc. 46-4, Humane Society opposition

26  p.23.) California and the defendant intervenors are convinced that absent Section 599f, animals will be

27  inhumanely treated - prodded, poked, kicked to stand and proceed to slaughter.  Indeed, these are

28  significant public interest issues which are acknowledged by California's "need to do more" than

1  perceived done in the FMIA and its implementing regulations.  This public interest weighs against the

2  issuance of a preliminary injunction enjoining Section 599f.

3      Again, as shown above, the FMIA and implementing regulations provide for the humane

4  treatment of animals.  The Court acknowledges that the enforcement scheme may not extend as far as

5  California and defendant intervenors would prefer.  Nonetheless, California is not without statutory

6  authority to protect animals.  California may enforce these federal protections.[2]

7      Accordingly, in the interest of protecting the quality of the food supply and the quantity of meat

8  processed for human consumption, and because adequate enacted law minimizes the potential risk, the

9  Court finds that the balance of interests weigh in favor of enjoining enforcement of Section 599f against

10  swine slaughterhouses regulated by the Federal Meat Inspection Act.

11  **E.      Bond Pursuant to Rule 65**

12      Pursuant to Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining

13  order only if the movant gives security in an amount that the court considers proper to pay the costs and

14  damages sustained by any party found to have been wrongfully enjoined or restrained."

15      California has not argued that a bond should be issued for its protection.  Indeed, the Court finds

16  that no costs or damages are incurred by California by the issuance of the injunction.  Therefore, no bond

17  will be ordered to be posted.

18                      **CONCLUSION AND ORDER**

19      For the foregoing reasons, the Court finds that a preliminary injunction should issue enjoining

20  enforcement of Section 599f against swine slaughterhouses regulated by the Federal Meat Inspection

21  Act.

22      IT IS THEREFORE HEREBY ORDERED that the necessary elements for a Preliminary

23  Injunction under Rule 65 of the Federal Rules of Civil Procedure have been satisfied, and Plaintiff's

24  Motion is GRANTED as follows:

25      Defendants and their agents, servants, employees, officers, representatives, successors and

26

27          [2] The Court acknowledges the investigation by the Humane Society in which it uncovered inhumane treatment at
28  a slaughterhouse facility.  This Court does not trivialize or disregard the treatment of animals.  This conduct, however, is but
    one of various factors the Court must consider under the law.

assigns, and all persons, firms, and corporations acting in connection or participation with Defendants or on their behalf, are hereby enjoined and restrained from enforcing California Penal Code § 599f, as amended and effective January 1, 2009, against swine slaughterhouses regulated by the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.*

This Order shall be effective upon completion of personal service upon the designated representatives of each of the named defendants.

IT IS SO ORDERED.

**Dated:    February 19, 2009**                    /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE